UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:06CV-293-H

WILLIAM E. TAYLOR                                                                            PLAINTIFF

V.

UNITED PARCEL SERVICE, INC.                                                        DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff, William E. Taylor, has asserted claims for sexual discrimination under

Kentucky law.[1]  Now that discovery is complete, Defendant, United Parcel Service, Inc., has

moved for summary judgment on all claims.  Plaintiffs' claims cannot proceed because (1) the

actions complained of are not pervasive or serious enough to create a hostile work environment

as our cases define it and because (2) the adverse action Defendant did take against Plaintiff was

required by federal law and, thus, cannot be said to create a state cause of action for retaliation.

I.

Plaintiff is currently employed by Defendant and has been so employed since 1982.  He

is represented by Local 89 of the International Brothers of Teamsters ("the Union").  The events

relevant to this lawsuit began to unfold in 2000.  On one occasion that year, Plaintiff alleges that

a supervisor, Joe Cotter, grabbed his rear end.  Approximately nine months later according to

Plaintiff, Cotter again touched his rear end for a short time, perhaps a second.  In August, 2002,

---

[1] In Count II of his Complaint, Plaintiff also asserted a claim for racial discrimination which he now
appears to have abandoned.  Plaintiff's Response to Defendant's Motion for Summary Judgment at 9.

Plaintiff alleges that Cotter tapped his rear end with a rolled up piece of paper.  Plaintiff does not allege that Cotter made any statements to him at the time these three incidents allegedly occurred.        Plaintiff also says that a coworker, Larry Desawyer, had a single conversation in which he discussed Plaintiff and his body parts in a sexual manner.[2]  Moreover, Plaintiff alleges that a supervisor, Paul Rousch, told Plaintiff of his "sexual fantasies"[3] and made two other comments to Plaintiff[4] which Plaintiff contends constitute harassment.  Finally, Plaintiff alleges that Cotter made comments to others regarding Plaintiff's rear end.[5]  So far as the Court can tell, these incidents are all the occasions of harassment which Plaintiff alleges.

Plaintiff asserts that he reported some of these incidents to management.  On August 17, 2002, Plaintiff filed a grievance complaining of Cotter's conduct, though the Union decided not to pursue the grievance.  Shortly after Plaintiff filed his grievance, someone apparently informed Defendant that Plaintiff had a felony in his record.  Linda Turner, a representative of Defendant's security operation, was assigned to investigate both Plaintiff's harassment complaint and the report of Plaintiff's involvement in a drug-related incident.  As a result of this investigation, Defendant did determine that Taylor had been convicted of a drug-related felony

---

[2]Plaintiff alleges that Desawyer told employees in the break room that "[Desawyer]'s mad...because Joe Cotter don't touch [Desawyer's] butt like he do Billy T's."  Deposition of Plaintiff at 52.

[3]This allegation is based on an incident in which Plaintiff was publicly discussing how he would want to "grind it in" with his coworkers were he to win a lottery jackpot, in response to which Rousch "got crazy with that word" and said "grind it in me" to the Plaintiff.  Deposition of Plaintiff at 36.

[4]In the first, Plaintiff alleges that on an occasion where an office printer was warming up, Rousch "looked left and looked right and got a little closer and told me to blow on the printer, it will warm up quicker."  Deposition of Plaintiff at 37.  In the second, Plaintiff alleges that after having been assured by his employer that Rousch would only speak to him regarding "work-related stuff," Rousch offered to pick up food for Plaintiff given that Rousch and others were going to an off-site restaurant.  *Id.* at 39-41.

[5]Plaintiff alleges that a coworker, Paul Ireland, told him that Ireland had seen Cotter "talking to other supervisors...[and saying] that Billy Taylor got a butt like a 12-year-old boy."  Deposition of Plaintiff at 50-51.

in 1994.

Plaintiff's prior felony conviction forced Defendant to take action, as the terms of the Aviation Security Improvement Act of 1990, 49 U.S.C. § 44936, prohibit persons with felony convictions from working within secured areas of airport property.  Thus, following consultation with Plaintiff and the Union, Defendant and Plaintiff executed a Letter of Agreement providing for Plaintiff's continued employment and setting forth certain restrictions upon it.  The restrictions prohibited Plaintiff's access to certain airport property and deemed him ineligible for certain holiday and overtime work.  Plaintiff worked under the Letter of Agreement for two and a half years.  After successfully getting his felony conviction expunged in 2005, Plaintiff was returned to his regular job status, without any restrictions.

After filing this lawsuit in late May 2006 in Jefferson Circuit Court, Plaintiff alleges that he received two written disciplinary actions[6] and was assigned work while other employees were idle.[7]

## II.

Summary judgment is proper if the evidence submitted shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

---

[6]The first incident pertains to an occasion when Plaintiff, being "a U[niversity] of L[ouisville] fan" when Coach Rick Pitino "was losing games" said "somebody need to put their foot in Pitino's rear end to get him winning some games because shooting threes is not the thing to do."  Deposition of Plaintiff at 41-42.  Plaintiff made his comment when "another employee was on a forklift moving something" and it was allegedly reported "that [Plaintiff] said stick a forklift up his rear end."  *Id.*

The second incident pertains to an occasion when Plaintiff was "talking to another employee" regarding his purchase of automobile wheels.  Plaintiff alleges that during a point the conversation when he was telling his coworker that Plaintiff had to sue the merchant as a result of their dealings, a passerby overheard Plaintiff and "told management...that [Plaintiff] was talking about suing [Defendant]," which resulted in the write-up.  *Id.* at 46-47.

[7]This allegation apparently refers to Plaintiff's belief that he was assigned work while "other employees were just sitting around having a good time." Deposition of Plaintiff at 149.

3

law." Fed.R.Civ.P. 56(c) . In applying Rule 56(c) , a court views the evidence in a light most

favorable to the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).  A court properly enters summary

judgment where there is not sufficient evidence in support of the non-movant's case upon which

"a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

 Plaintiff brings his claim under the Kentucky Civil Rights Act ("KCRA"), which among

other things prohibits employers from "discriminat[ing] against an individual with respect to

compensation, terms, conditions, or privileges of employment" on the basis of sex, and from

"limit[ing], segregat[ing], or classify[ing] employees in any way which would deprive or tend to

deprive an individual of employment opportunities or otherwise adversely affect status as an

employee" because of the employees' sex.  Ky. Rev. Stat. § 344.040.  Because the KCRA is

modeled on Title VII of the Civil Rights Act of 1964, Kentucky courts interpret it to be

consistent with corresponding federal anti-discrimination laws.  *Williams v. Wal-Mart Stores,*

*Inc.*, 184 S.W.3d 492, 495 (Ky. 2006); *see also Smith v. Leggett Wire Co.*, 220 F.3d 752, 758

(6th Cir. 2000) (noting same).

III.

 To make out a *prima facie* case of sex discrimination based on allegations of a hostile

work environment[8], an employee must show that (1) the employee is a member of a protected

class; (2) the employee was subject to unwelcome harassment; (3) the harassment was based on

the employee's sex; (4) the harassment created a hostile work environment; and (5) the employer

failed to take reasonable care to prevent and correct any harassing behavior.  *Vickers v. Fairfield*

---

[8]Though not explicitly styled as such, Count I of Plaintiff's Complaint is best analyzed as a hostile work environment claim and Count II as a retaliation claim.

4

*Med. Ctr.*, 453 F.3d 757, 762 (6th Cir. 2006).

Defendant has offered several reasons why Plaintiff's sexual harassment claim cannot proceed on the evidence before the Court, including the argument that Plaintiff has no evidence suggesting that the alleged harassment he suffered was based on his sex. The Court need not address these issues, as it finds that the incidents alleged by Plaintiff, even if true, did not in their totality rise to the level of a hostile work environment.

A hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). To be sufficiently "severe or pervasive," (1) the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and (2) a plaintiff must subjectively regard the environment as abusive. *Id.* On a motion for summary judgment, this Court must search for evidence about "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether [the conduct] unreasonably interferes with an employee's work performance." *Id.* at 23. And while "even where individual instances of sexual harassment do not on their own create a hostile environment, the accumulated effect of such incidents may result in a Title VII violation," *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 563 (6th Cir. 1999), the federal and state discrimination statutes are not intended to make actionable claims of workplace disagreements or isolated objectionable actions or comments. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (recognizing the importance of preventing Title VII from becoming "a general civility code.") (internal citations

omitted)[9].

A review of many cases which discuss hostile work environment claims reveals that pervasive name-calling, threatening language, intimidating actions or insults are standard and probably required fare in every instance,[10] and even the presence of such conduct does not automatically trigger a finding of a hostile work environment.[11]  Here, Plaintiff alleges only three specific incidents spread over almost three years.  On each occasion, Plaintiff alleges that Joe Cotter touched or tapped him on the rear end.  None of the incidents lasted for more than a few seconds, and none was accompanied by any verbal sexual slurs, remarks or solicitations.  Plaintiff's only other evidence is his allegation that several employees talked about him in a sexual way.  Plaintiff alleges none of the ethnically- or sexually-based derogatory remarks and slurs that are so common in the other cases cited.  In fact, as just noted, Cotter apparently made no remarks to Plaintiff whatsoever.

The conduct here pales in comparison in both character and quantity to that present the other cases in which courts have found the *Harris* "severe and pervasive" criteria to be satisfied.

---

[9]Despite Plaintiff's apparent arguments to the contrary, these principles and analytical standards apply equally to harassment of a verbal nature and of a physical nature, as is apparent from the cases noted below.  As is clear from the cases, "touching" may indeed be "an important distinction," Plaintiff's Response at 6, but only to the extent that it is one of any number of circumstances to be considered in the totality-of-the-circumstances analysis. Plaintiff seemingly misapprehends cases in which courts consider whether or not touching occurred, apparently understanding these cases to mean that the presence or absence of physical contact is dispositive.  Furthermore, Plaintiff cites no authority for the proposition that anytime physical contact is involved, courts must find a Title VII violation.  As is apparent from the cases listed below, such a proposition is contrary to the overwhelming weight of authority in this area.

[10] *See, e.g., Jordan v. City of Cleveland*, 464 F.3d 584 (6th Cir. 2006); *EEOC v. Harbert-Yeargin, Inc*., 266 F.3d 498 (6th Cir. 2001); *Allen v. Michigan Dep't of Corr*., 165 F.3d 405 (6th Cir. 1999); *Moore v. KUKA Welding Sys. & Robot Corp.,* 171 F.3d 1073 (6th Cir. 1999); *Williams*, 187 F.3d 553; *Jackson v. Quanex Corp.*, 191 F.3d 647 (6th Cir. 1999).

[11]*See, e.g., Clay v. United Parcel Serv.*, 2007 WL 2457455 (6th Cir. 2007); *Burnett v. Tyco Corp.,* 203 F.3d 980 (6th Cir. 2000); *Smith*, 220 F.3d 752; *Black v. Zaring Homes, Inc*., 104 F.3d 822 (6th Cir. 1997).

Viewed in their totality, Plaintiff's allegations fall far short of the conduct that courts have traditionally found viable for hostile work environment claims, and the Court therefore finds the conduct alleged here is not actionable under Kentucky law.

III.

As noted above, the second prong of Plaintiff's Complaint alleges that he was retaliated against for reporting the alleged sexual harassment.  Specifically, Plaintiff claims that because he complained of sexual harassment, Defendant required him to sign the Letter of Agreement and issued two disciplinary "write-ups," and that he was subjected to comments by coworkers Larry Desawyer and Paul Ireland regarding the alleged harassment.[12]

In order to make out a *prima facie* case of sex discrimination based on allegations of retaliatory action by an employer, an employee must show (1) that he is a member of a protected class, (2) that he was subject to an adverse employment decision, (3) that he was qualified for the position, and (4) that he was treated differently than a similarly situated individual outside the protected class.  *Vickers*, 453 F.3d at 762.

Defendant has offered several reasons why Plaintiff's retaliation claim cannot proceed on the evidence before the Court, including the argument that Plaintiff was not engaging in protected activity when reporting the alleged harassment.  The Court need not address this argument, as it finds that the allegedly retaliatory actions listed by Plaintiff do not rise to the level of being adverse employment actions.

 An adverse employment action is one that might dissuade "a reasonable worker from

---

[12]Though the Court views the allegations regarding Ireland's and Desawyer's comments as speaking more appropriately to Plaintiff's allegation of a hostile work environment, review of Plaintiff's deposition indicates that Plaintiff clearly believes these comments also constituted retaliation toward him.  As such, the Court will consider them in its retaliation analysis as well.

7

making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2415 (2006) (internal citations omitted).  Importantly, "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience," and the "reasonable worker" standard is imposed in order to avoid "uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings." *Id.*

At the outset, the Court notes that Plaintiff has not produced any documentation that the "write-ups" of which he complains actually occurred.  And regardless, Plaintiff has produced no evidence that the write-ups, if they existed, caused any consequences at all, much less any serious enough to qualify as one that would deter a reasonable employee from reporting discrimination.  Review of Plaintiff's deposition confirms that his job status, conditions of employment, and pay were never changed as a result of the alleged write-ups.  Deposition of Plaintiff at 43, 47-48.  Therefore the alleged write-ups cannot qualify as adverse employment actions and cannot support Plaintiff's retaliation claim.  Similarly unavailing as bases for Plaintiff's claim are the comments by Ireland and Desawyer, which clearly fall more into the category of "petty slights or minor annoyances" than actions which would deter a reasonable employee from reporting discrimination.[13]

The employment consequences arising from the Letter of Agreement present a more interesting question because Plaintiff was placed in a lower-paying position as a result of that

---

[13]Indeed, Ireland's comment appears to be little more than a report to Plaintiff of what Cotter was overheard saying.  Deposition of Plaintiff at 50-52.

Agreement.  Under 49 U.S.C. § 44936, persons with felony convictions are ineligible to work within secured areas of airport property.  Because Plaintiff's job responsibilities were largely within such a restricted area, Defendant had no choice but to  prohibit him from performing his regular work duties once his felony conviction came to light.  Apparently not wishing to terminate Plaintiff's employment altogether, Defendant instead entered into the Letter of Agreement, which represented an agreement between Plaintiff and Defendant, made with the assistance of Union representatives.  Plaintiff has contested neither the Agreement's factual nor its legal premises.

The premise of Plaintiff's retaliation claim must be that Defendant imposed the restrictions contained in the Letter of Agreement because Plaintiff sought to exercise his administrative remedies.  But if federal law required Defendant to take the action reflected in the Letter of Agreement, the Court cannot simply assume that Defendant required the Agreement for some entirely separate purpose.  Plaintiff argues that Defendant's invocation of federal law on this point was nothing more than a pretext for imposing an adverse employment action upon him.  Yet since the parties agreed upon the restrictions and the reasons for them at the time of the signing, Plaintiff must have some evidence that the Agreement was nevertheless a mere pretext for retaliatory action.  Plaintiff's argument is seemingly based on nothing more than the fact that his reporting of the alleged sexual harassment took place prior in time to the Letter of Agreement.  Deposition of Plaintiff at 25-26. Nothing other than this temporal observation supports Plaintiff's pretext argument, and as such the assertion cannot proceed.  Quite simply, Plaintiff has no evidence to suggest that the reasons for the Letter of Agreement are anything other than those set forth in the agreement itself.  After thorough consideration, therefore, the

Court also finds that the Agreement and the consequent circumstances do not amount to an adverse employment action.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion for summary judgment is SUSTAINED and Plaintiff's complaint is DISMISSED in its entirety WITH PREJUDICE.

This is a final and appealable order.


Date: January 9, 2008


cc:     Counsel of Record